(No. 35825.—

WILLIAM GALE *et al.,* Appellants, *vs.* YORK CENTER COMMUNITY COOPERATIVE, INC., Appellee.

*Opinion filed Dec. 1, 1960.—Rehearing denied Jan. 18, 1961.*

EDWARD JACOBS, of Wheaton, for appellants.

RATHJE and WOOWARD, of Wheaton, and LEON M. DESPRES, of Chicago, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The principal question presented by this appeal is whether a co-operative housing association may partially restrain the alienability of its members' property interests in order to maintain its existence as a co-operative enterprise. The circuit court of Du Page County held such restraints and all other portions of the written agreements between York Center Community Cooperative, Inc., a co-operative housing association, and the seven plaintiff families, members of the association, to be valid, and directed five of the plaintiff families to reconvey the properties they occupy to the association. Five of the plaintiff families have appealed from the decree. A freehold is involved.

York Center is a subdivision located just south of Lombard. There are 72 families living in the subdivision, each of whom is a member of the defendant association, a not-for-profit corporation organized for the purpose of establishing and maintaining a co-operative housing community. Legal title to all real estate in the subdivision is held by the association and the members each own a membership entitling them to the perpetual use and occupancy of their respective dwellings.

The rights and duties of membership are set out in uniform written agreements between each member and all other members, in which the association acts as the contracting party for the other members. The membership contract, certificate of membership, and bylaws of the association constitute the agreement. Membership is open to all persons, regardless of race, color or creed, who are in agreement with the aims and purposes of the association and who, in the judgment of the board of directors, can comply with the bylaws of the association. Each mem-

ber holds only one membership, which is equal in value to the appraised value of his home and lot plus his interest in the association. The membership entitles the member to one vote in the conduct of affairs of the association.

The association, by action and participation open to all of its members, acts to develop and maintain the subdivision as a carefully planned, nonspeculative, attractive community. To this end it may use surplus savings to provide or replace community facilities; levy assessments for taxes, operating expenses, and general community improvements; redeem membership upon a member's notice of withdrawal; pass on requests for approval of membership transfers; pass on redemption of membership or approval of heirs or legatees in case of a member's death; pass on the admission of new members; decide on the expulsion of members guilty of seriously detrimental conduct and redeem their memberships; pass on all building and roadside planting plots and plans; adopt occupancy standards; correct nuisances; terminate undesirable nonresidential uses; and require repairs to dwellings. In all other respects each member enjoys all the incidents of individual ownership with respect to the dwelling he occupies. Thus, the members have built their own homes, have done their own financing, make their own mortgage payments, arrange and pay for the insurance on their homes and otherwise conduct themselves in many respects as the owners of the dwellings they occupy.

The plaintiffs argue that restrictions on their right to transfer their memberships violate the rule against restraints on alienation of property and are therefore void. The agreement provides that when a member wishes to withdraw, he shall give written notice of his intent to the board of directors. The association then has a twelve-month period in which to purchase the membership at any of the following prices, as determined by the association: (1) at the selling price fixed in the notice; or (2) at whatever price the member and the association agree on; or (3) at

the price determined by impartial appraisal. If the association does not exercise its option within twelve months, the membership may be sold on the open market. If the purchaser is not acceptable to the association, it may redeem the membership within 90 days. If this redemption is not exercised in 90 days, the purchaser then acquires the membership upon request. It is provided, nevertheless, that membership may be transferred subject to the written approval of the board.

The agreement further provides that upon written request the association will give to a member a deed for the purpose of obtaining a loan secured by a mortgage on the premises he occupies. The member is to reconvey the premises after he obtains his loan. The mortgagee is not required to inquire as to compliance with the agreement as long as the member has a deed from the association, and he may treat the member as the fee-simple owner of the mortgaged premises.

The agreement also provides that when a member dies and his membership passes by will or by statute of descent to a single family household headed by a son, daughter, spouse, or parent of the deceased member, such family shall, upon application and execution of the membership agreement, become a member without further inquiry by the association. If the membership passes to several individuals who are not members of the same family household, they are to decide which family household is to receive the membership rights; and if the family so chosen is headed by a child, spouse or parent of the deceased member, he shall, upon application and execution of the membership agreement, become a member without further inquiry from the board. If the membership passes to an individual or group not wishing to become a member, the association may redeem the membership within twelve months. If the membership passes to an individual or group not including a child, spouse, or parent of the deceased

member and the individual applies for membership, his application is to be given first consideration; and if he is not approved, the association may redeem within twelve months. If the membership passes to a group of individuals who cannot agree within twelve months as to the disposition to make of the membership, the association is to have a second twelve-month period in which to redeem the membership.

It seems to us the agreements show a studied effort on the part of the association to retain some voice in the selection of new members and at the same time to give its members as much freedom as possible in alienating their interests. Experience shows this to be the only way to keep co-operative housing co-operative. ("Organization and Management of Cooperative and Mutual Housing Associations," Bureau of Labor Statistics Bulletin 858 (1946); "Mutual Housing," National Housing Agency (1946).) As necessary as these restrictions may be to co-operative housing, it must be determined whether they violate the rule against restraints on alienation.

It should be noted at the outset, that the rule has not had a logical and consistent development. (For an extended treatment of this subject see Gray, Restraints on Alienation of Property, 2d ed., and Schnebly, Restraints Upon the Alienation of Legal Interests, 44 Yale L.J. 961, 1186, 1380.) This seems to be due to the fact that such restraints vary greatly in form, and the application of the rule has turned largely on such considerations as the kind of property involved, the quality of the interest, and the form of the restraint. It has been stated that "probably nowhere in the law does one find more resort to dogma than here." Carey and Schuyler, Illinois Law of Future Interests, p. 542.

While other reasons are sometimes given for the rule, it seems to call for no other than that of sound public policy. (*Davis* v. *Hutchinson*, 282 Ill. 523; Gray, Restraints on the Alienation of Property, 2d ed., sec. 21; Carey and

Schuyler, Illinois Law of Future Interests, sec. 421; Tiffany, The Law of Real Property, 2d ed., sec. 592.) Restraints on alienation keep property out of commerce, they tend to concentrate wealth, they may prevent the owner consuming the property except as to the income from it, they may deter the improvement of the property and they may prevent creditors from satisfying their claims. Against these and other social and economic disadvantages to the public, the only benefit that would often accrue from such restraints is the satisfaction of the capricious whims of the conveyor. Thus, as a general rule, restraints on alienation are void even though they are limited in time, (*McFadden* v. *McFadden,* 302 Ill. 504,) or as to mode, (*Noth* v. *Noth,* 292 Ill. 536,) or as to persons, (*Jenne* v. *Jenne,* 271 Ill. 526,) or whether the restraint is upon the alienation of a fee, (*McNamara* v. *McNamara,* 293 Ill. 54), or of a life estate, (*Randolph* v. *Wilkinson,* 294 Ill. 508), or of a vested future interest, (*Tolley* v. *Wilson,* 371 Ill. 124), or of personal property. (*State Street Furniture Co.* v. *Armour & Co.* 345 Ill. 160.) Such a restraint may be sustained, however, when it is reasonably designed to attain or encourage accepted social or economic ends. Thus, in *Swannell* v. *Wilson,* 400 Ill. 138, a restraint on alienation of property contained in a divorce decree was sustained for the protection of the divorced wife and to maintain the stability of the property settlement agreement; and in *Dickenson* v. *City of Anna,* 310 Ill. 222, a restraint upon alienation of property given to charity was upheld.

From the authorities here mentioned and many others examined, it would appear that the crucial inquiry should be directed at the utility of the restraint as compared with the injurious consequences that will flow from its enforcement. If accepted social and economic considerations dictate that a partial restraint is reasonably necessary for their fulfillment, such a restraint should be sustained. No restraint should be sustained simply because it is limited

in time, or the class of persons excluded is not total, or all modes of alienation are not prohibited These qualifications lessen the degree to which restraints violate general public policy against restraining alienation of property and should be considered to that extent; but they are not, in themselves, sufficient to overcome it. In short, the law of property, like other areas of the law, is not a mathematical science but takes shape at the direction of social and economic forces in an ever changing society, and decisions should be made to turn on these considerations.

We are of the opinion that the utility of the restraints in this agreement outweigh the injurious consequences to the public, if any. The legislature has given its approval to ownership of residential property on a co-operative basis by providing that not-for-profit corporations may be organized for this purpose. (Ill. Rev. Stat. 1957, chap. 32, par. 163a3.) The restrictions on transfer of a membership are reasonably necessary to the continued existence of the co-operative association. This demonstrates the social utility of the partial restraints and might of itself be a basis for sustaining them. In addition, however, enforcement of the restraints in question would not appear to produce injurious consequences to the public. They would not tend to keep the property in the same family and concentrate wealth, but would seem to some extent to prevent retention by one family. The member is not prevented from liquidating his interest and therefore consuming the property. Creditors are not prevented from satisfying their claims. Members are encouraged to improve their homes and the value of any improvement will be realized when they liquidate their interest. Co-operative ownership of residential property in this country seems to be increasing in popularity, and the extent to which these partial restraints would keep property out of commerce is entirely problematical.

Plaintiffs also argue that the agreements between them and the association are ambiguous, conflicting, vague and

indefinite. They have set forth a number of hypothetical situations and allege that the agreements do not spell out the respective rights and duties of the parties in those situations.

In order for a contract to be binding, it must be definite and certain in all of its terms. (*Morey v. Hoffman,* 12 Ill.2d 125.) It is sufficiently definite and certain, however, if the court is able from the terms and provisions thereof, under proper rules of construction and applicable rules of equity, to ascertain what the parties have agreed to do. (*Bonde v. Weber,* 6 Ill.2d 365; *Ruddock v. American Medical Association,* 415 Ill. 63; *Welsh v. Jakstas,* 401 Ill. 288.) We are of the opinion that the agreement in question meets this test. It is not necessary or proper for us to construe in abstraction the terms of the agreement the plaintiffs assail. We are satisfied that when situations arise which call for their application, the courts will have no difficulty in ascertaining what the parties have agreed to do.

It is finally argued that the association is not entitled to deeds of reconveyance from the plaintiffs as decreed by the trial court. The association gave deeds to some of the plaintiffs for the purpose of obtaining mortgage financing pursuant to the membership agreement. Although the agreement provides that deeds of reconveyance are to be executed after the financing is complete and the plaintiffs have completed their financing, they have refused to execute deeds. Specific performance was properly decreed. The fact that the association permitted the plaintiffs to make their mortgage payments directly to the mortgagees, rather than through the association as is provided in the agreement, does not preclude the association's right to reconveyance.

We find no error in the decree of the circuit court of Du Page County, and it is accordingly affirmed.

*Decree affirmed.*