Victoria **MOWATT**, Plaintiff-Appellant,

v.

**1540 LAKE SHORE DRIVE CORPORA-TION** et al., Defendants-Appellees.

No. 15825.

United States Court of Appeals
Seventh Circuit.

Sept. 28, 1967.

Rehearing Denied Nov. 13, 1967.

James A. Dunkin, Chicago, Ill., for appellant.

Roger W. Barrett, Robert L. Stern, Jacob M. Shapiro, George W. Hamman, Chicago, Ill., for defendants-appellees, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.

D'Ancona, Pflaum, Wyatt & Riskind, Chicago, Ill., of counsel, for Maurice A. Riskind.

Before SCHNACKENBERG, KNOCH and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Plaintiff Victoria Mowatt is a stockholder-lessee of defendant 1540 Lake Shore Drive Corporation. The other defendants are or have been directors.[1]

Defendant corporation owns a multi-story residential apartment building in Chicago. Stockholders must be lessees, and vice versa. Shares are transferable only to such assignee as may be permitted by the lease. The lease provides that the lessee shall not assign the lease nor sublet his apartment without consent in writing pursuant to a resolution of a majority of the entire board of directors. The lessee must pay a share of current operating expenses, as assessed by the board, and a substantial sum is ordinarily paid for an assignment, presumably representing a share in the equity. In 1948 Mrs. Mowatt purchased stock and a 98 year lease of an apartment for $13,500.

---

1. Jurisdiction is founded on diversity. Illinois law controls.

Mrs. Mowatt has made a number of attempts to sell her interest or to sublet her apartment. The board has consented to several subleases, but has refused consent on other occasions.

She brought this action, alleging in the first count that defendants, in violation of a promise implied in the lease, had unreasonably refused consent, and seeking damages for assessments paid while the apartment has been vacant, and other items. In the third count she sought a declaration that the requirement of consent is void as an unreasonable restraint on alienation. A second count, alleging conspiracy and seeking exemplary as well as compensatory damages has not been debated on appeal.

The district court gave judgment for defendants, including recovery of unpaid assessments as sought by counterclaim. Mrs. Mowatt appealed.

### Validity of the restriction.

Defendants contend that they have the same full and arbitrary power to withhold consent which a landlord has under a provision of a lease against assigning or subletting without his consent, and that such provision is valid. They cite New York and Massachusetts cases so holding in similar cooperative arrangements.[2] The public policy which controls this case, however, is that of Illinois.

In 1960, the Supreme Court of Illinois decided Gale v. York Center Community Cooperative, Inc.[3] That case involved a subdivision for 72 family homes. The land was owned by a not-for-profit corporation. Each member had the right to perpetual use and occupancy of his home. Each member built his own home, and was permitted to effect a first mortgage lien for that purpose. When a member desired to sell, the corporation had twelve months in which to buy at an impartially determined or mutually agreed upon price. If the corporation did not buy within the twelve months, the member

was free to sell elsewhere, except that the association could still redeem within 90 days after the sale.

These provisions were attacked as a void restraint on alienation of property. The court upheld them.

The court stated that although as a general rule restraints on alienation are void, such a restraint "may be sustained, however, when it is reasonably designed to attain or encourage accepted social or economic ends."

The analysis to be made in each case was described as follows:

"From the authorities here mentioned and many others examined, it would appear that the crucial inquiry should be directed at the utility of the restraint as compared with the injurious consequences that will flow from its enforcement. If accepted social and economic considerations dictate that a partial restraint is reasonably necessary for their fulfillment, such a restraint should be sustained. No restraint should be sustained simply because it is limited in time, or the class of persons excluded is not total, or all modes of alienation are not prohibited. These qualifications lessen the degree to which restraints violate general public policy against restraining alienation of property and should be considered to that extent; but they are not, in themselves, sufficient to overcome it. In short, the law of property, like other areas of the law, is not a mathematical science but takes shape at the direction of social and economic forces in an ever changing society, and decisions should be made to turn on these considerations."[4]

We do not read the Gale decision as holding that all restrictions in cooperative housing arrangements are void unless they approximate the first refusal device which was held valid there. But we do understand that any such restric-

2. Weisner v. 791 Park Avenue Corporation, 6 N.Y.2d 426, 160 N.E.2d 720 (1959); 68 Beacon Street v. Sohier, 289 Mass. 354, 194 N.E. 303 (1935).

3. 21 Ill.2d 86, 171 N.E.2d 30.

4. 21 Ill.2d 86, 171 N.E.2d 30, 33.

tion must be subjected to the "crucial inquiry" referred to in *Gale*.

Generally two reasons are given for the inclusion of such restraints in the transfer of cooperative apartments. The basic economic reason is that ultimately the tenant-shareholders must bear all the costs of the operation. If one tenant-shareholder fails to pay his share, the others must, as a practical matter, make up the difference. There is therefore a direct and substantial economic interest in the choice of new tenant-shareholders who are financially responsible.

In addition the basic social reason is that the tenant-shareholders will be living in close proximity to one another so that they have an interest in seeing that their neighbors are friendly and like minded about matters of common concern, such as, noise, pets, etc. Moreover because of their substantial investment in the joint enterprise they are not as free as ordinary tenants to move away because of the annoying habits of neighbors.

Because of those reasons, most cooperative developments find it necessary to include some type of restraint on transfer in the basic operational documents of the development.[5]

Tenants in a cooperative apartment house have at least as much interest in the financial capability of their fellow tenants as the dwellers in the type of subdivision involved in *Gale*. The personal contacts are doubtless closer and more frequent, and an even closer control on the qualifications of new members seems justified. Yet the tenants in the apartment house do not live in a wholly communal manner, and the freedom of each member-tenant to dispose of his property right should be afforded protection. We do not think that absolute control by the group can be justified.

■ We conclude that, under *Gale*, the requirement of consent in the case at bar is valid if the power to withhold consent must be reasonably exercised in the light of the purposes of the arrangement, and would be void if it need not be.

Of course the requirement of reasonable exercise is not spelled out in the lease nor by-laws, and the choice before us is between deeming it implied so as to save the provision and doing greater damage to the purpose of the arrangement by deeming the provision void. We think the former is the sounder alternative. Consent can be withheld only on some reasonable basis in the light of the significant needs and purposes of the cooperative arrangement.

*The finding that defendants acted reasonably.*

■ Plaintiff's first count, her contract claim, was based on the implication that defendants were obliged to act reasonably.

The district court found that:

" * * * the action by the board in rejecting certain applicants was based upon reasonable criteria such as insolvency, association with people of disreputable character, and noisiness, which would bear directly upon the desirability of such applicants as co-tenants. The actions by the Board of Directors in passing upon proposed purchasers were not arbitrary nor were the reasons for rejection inconsequential."

On four occasions, the board gave consent to Mrs. Mowatt's subletting. There follows a summary of the basis for the refusals occurring in the period covered by the first count:

1953: The board refused to consent to a sublease. The financial report on the proposed subtenant showed two bankruptcy proceedings against a person of the same name. The earlier of the two undoubtedly did not involve this individual. Several members of the board were aware of a widespread and long standing reputation in financial circles that the individual's brother was involved with gangsters. One man listed as a reference gave a written recommendation,

5. Anno., 99 A.L.R.2d 236 (1965).

but withdrew it orally, saying it was written for business reasons and he did not mean it.

1953, later: The board refused to consent to a sublease. The financial report on the proposed subtenant showed he was heavily in debt, was slow in payments, and had suffered 4 judgments in 2 years.

1959: The board refused to consent to a second degree sublease proposed by a subtenant who had himself been approved. The proposed subtenant and his wife were known by tenant-stockholders of defendant. The wife was inclined to make angry scenes with her husband in public, sufficiently that other people were made uncomfortable. This situation had caused trouble in other buildings where they had lived.

1962: The board refused to consent to an assignment. The board at first had approved the proposed buyer at a meeting from which two directors were absent. One of the absent ones secured a reconsideration because of unfavorable information known to him. Another director, who had originally voted favorably, investigated. He interviewed a man who had a substantial lawsuit, on the ground of fraud, pending against the buyer's company. He felt there was a strong question of the buyer's financial capacity to fulfill the lease, and he learned that the buyer had reneged or defaulted on a number of substantial charitable pledges.

It appears in the last case, and is probably true in the others, that defendants gave no opportunity to Mrs. Mowatt, or the proposed buyer and tenants, to overcome the derogatory information. There is no evidence tending to show, however, that such information was mistaken, and in the last case, defendants offered several pieces of evidence, not admitted by the district court because not considered by the board, which tended to confirm the board's decision.

There is also evidence that Mrs. Mowatt held her apartment at an unreasonably high price in the light of its condition, and by comparison with other similar apartments. Quite possibly there were other prospects who would have dealt with her on more reasonable terms, who would have been approved by the board.

The finding of the district court on the issue of reasonableness is not clearly erroneous. The judgment will be

Affirmed.