# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Robbins and Jennifer Merves : 
Robbins, and Larry Scott Auerbach, : 
Executor of the Estate of Shirley : 
Braverman, Deceased : 
: No. 979 C.D. 2015
v. : Argued: February 9, 2016
: 
Penn Center House, Inc., : 
: 
Appellant : 


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
SENIOR JUDGE COLINS                              FILED:  May 23, 2016


This is an appeal from a ruling of the Philadelphia County Court of Common Pleas (trial court) granting partial summary judgment in favor of plaintiffs Brian Robbins and Jennifer Merves Robbins (the Robbinses) and Larry Scott Auerbach, Executor of the Estate of Shirley Braverman (Estate) (collectively, Plaintiffs), and against defendant Penn Center House, Inc. (PCH) in an action for declaratory relief and damages.  This action arises out of a policy enacted by PCH's board of directors (Board) limiting the number of dwelling units that a member may own in its building and PCH's rejection of the Robbinses' purchase of an additional unit from the Estate based on that policy. The trial court held that limitation on the number of units that a member may own can be imposed only by amendment of PCH's bylaws, and therefore granted a

declaratory judgment that the Board's policy was void. For the reasons set forth below, we affirm that declaratory judgment.

PCH is a nonprofit cooperative housing corporation incorporated under Maryland law. (PCH Articles of Incorporation, Reproduced Record (R.R.) at 26a.) PCH owns and operates Penn Center House, a residential, cooperative housing building with over 420 dwelling units, located in Center City Philadelphia. PCH is owned by its members, who are individuals who own a cooperative interest in a unit under a membership certificate and have signed an occupancy agreement for their unit. (*Id.* Art. V, R.R. at 27a; PCH Bylaws Art. III §§ 1, 4, R.R. at 33a-34a.) All individuals with a membership certificate for the same unit constitute a single member. (PCH Bylaws Art. III § 4, R.R. at 34a.)

PCH's articles of incorporation do not define who may become a member or acquire an interest in a unit and do not set forth any rights or restrictions concerning sale or transfer of memberships or units, but provide that "[t]o the extent not addressed in these Articles of Incorporation, Members shall have such qualifications, rights and privileges as set forth in the by-laws." (PCH Articles of Incorporation Art. V § 1, R.R. at 27a.) PCH's bylaws provide with respect to membership:

> *Eligibility*. Any natural person approved by the Board of Directors shall be eligible for membership, provided that he or she executes a Subscription Agreement and an Occupancy Agreement in the usual form employed by the Corporation covering a specific unit in the cooperative (each, a "Unit").

(PCH Bylaws Art. III § 1, R.R. at 33a) (italics in original). PCH's bylaws can be amended only by a two-thirds vote of the members, not by a vote of the Board. (*Id.* Art. VIII, R.R. at 43a-44a.)

2

PCH's bylaws restrict transfer of units and provide that PCH has an option to purchase a member's membership and right of occupancy before he or she may sell it to a third party. (PCH Bylaws Art. III § 5, R.R. at 34a-35a.) The bylaws also provide that if PCH does not exercise that option,

> the member may sell his/her membership to any person who (i) fulfills the Corporation's membership eligibility requirements, (ii) is duly approved by the Corporation as a member, (iii) executes a Subscription Agreement and an Occupancy Agreement with the Corporation, and (iv) pays the Administrative Transfer Fee and such other charges as may be established from time to time by the Board.

(*Id.* Art. III § 5(c), R.R. at 34a-35a) (emphasis added). PCH's occupancy agreements in effect at the time of these events provided that if PCH did not exercise its option to purchase the unit,

> the Member may sell his membership to any person, but such sale shall not entitle the purchaser to any right of occupancy unless he has been duly approved by the Corporation as an occupant.

(2012 Form Occupancy Agreement Art. 7(c), R.R. at 394a; Estate Occupancy Agreement Art. 8(c), R.R. at 114a; Robbins Occupancy Agreements Art. 8(c), R.R. at 127a, 139a.)

PCH's bylaws neither restrict the number of units that an individual may own nor do they state that a member has a right to own more than one unit or purchase an interest in additional units. The bylaws contain language addressing the situation where an individual owns more than one unit, providing that such individuals count as a member for each unit that he or she owns in membership meetings and votes. (PCH Bylaws Art. IV §§ 5, 7, R.R. at 36a.) These provisions include a reference to possible ownership of three units, stating with respect to

3

annual meetings and special meetings of the members: "For illustrative purposes, should a member have interest in three Units, such member shall count as three members for purposes of determining whether a quorum is present." (*Id.* § 5, R.R. at 36a.) Nothing in the occupancy agreements addresses ownership of multiple units. (2012 Form Occupancy Agreement, R.R. at 390a-400a; Estate Occupancy Agreement, R.R. at 108a-120a; Robbins Occupancy Agreements, R.R. at 122a-144a.)

With respect to the powers of its board of directors, PCH's bylaws provide:

> *Powers and Duties*. The Board shall have the powers and duties necessary for the administration of the affairs of the Corporation and may do all such acts and things as are not by law or these Bylaws directed to be exercised and done by the members. The power of the Board shall include but not be limited:
> (a) To accept or reject all applications for membership and admission to occupancy of a Unit in the cooperative, either directly or through an authorized representative;
> (b) To establish monthly carrying charges prescribed in the Occupancy Agreement, based on an annual operating budget formally adopted by such Board;
> (c) To promulgate such rules and regulations pertaining to use and occupancy of the premises as may be deemed proper and which are consistent with these Bylaws and the Articles of Incorporation.

(PCH Bylaws Art. V § 2, R.R. at 37a) (underline emphasis added, italics in original). The Board's policies concerning membership applications in effect at the time of these events provided that when a unit became available, it was to be offered first to the members occupying the adjacent units. (PCH Procedural Guidelines for Applications, Agreements and Transfers, R.R. at 47a.) The Board's policies also required income and financial condition minimums for

4

approval of memberships and transfers, which are based on the sale price of the unit and the amount of the monthly charges to which the unit is subject, and provided for criminal background checks. (*Id.*, R.R. at 47a-48a; PCH Financial Requirements for Purchasing a Unit, R.R. at 414a.)

The Robbinses own and occupy Penn Center House Units 1001 and 1013, which they have merged internally into a single, combined dwelling. In December 2012, the Robbinses notified PCH's general manager that they had learned that the occupant of Unit 1015, which is adjacent to their Unit 1013, had passed away and that they wished to purchase it if it became available. The Robbinses intend to merge Unit 1015 with their combined Units 1001 and 1013.

In its March 2013 Board meeting, a proposal was made to limit the number of units that a member could own to two units. (March 2013 Board Minutes, R.R. at 73a.) This was initially proposed as a possible bylaw amendment, but was tabled and referred to the Board's Building Committee and Finance Committee for further discussion. (*Id.*) Following approval of a two-unit limitation by both the Building Committee and the Finance Committee, the Board at its April 16, 2013 meeting, by a vote of four to two, enacted the following policy:

> As a new policy, <u>any one member may not own more than two units</u>. Further, the name(s) on the certificate(s) for these unit(s) must be identical on both unit's [*sic*] certificates. Lastly, any name(s) on these certificate(s) may not appear on any other Unit certificate. <u>The only exception to this rule would be if additional unit(s) are to be purchased by an existing Member or Members and their original unit(s) are under agreement of intent to vacate and sell</u>. Adjoining Units are to be defined as being on the same floor, are physically connected internally, and do not breach the floor slabs of building fire walls.

5

(April 2013 Board Minutes, R.R. at 1113a) (emphasis added). The Robbinses were not the only PCH members seeking to purchase a third unit when the Board enacted the two-unit limit; a Board member who owned two units had also placed himself on the waiting list to purchase a third unit. (R.R. at 2408a, 2497a.)

On May 3, 2013, the Estate gave notice to PCH that Unit 1015 was available. In November 2013, the Plaintiffs entered into an Agreement of Sale to sell the Estate's interest in Unit 1015 to the Robbinses, subject to PCH's approval of the transfer and issuance of a membership certificate and occupancy agreement for Unit 1015 to the Robbinses. On December 9, 2013, the Estate submitted to PCH the Robbinses' application to purchase Unit 1015 and requested approval of the transfer of Unit 1015 to the Robbinses. (Estate Letter to PCH, R.R. at 66a.) On December 16, 2013, PCH rejected the application for transfer of Unit 1015 to the Robbinses based on the two-unit limitation enacted by the Board. (PCH Letter to Estate, R.R. at 68a.) Although Plaintiffs submitted financial information and a release for criminal background check, the Board did not make a determination whether the Robbinses satisfied the other requirements for approval. (R.R. at 66a, 68a.)

The Robbinses commenced this action against PCH on September 16, 2013. On February 26, 2014, the Robbinses and the Estate filed an Amended Complaint asserting claims for tortious interference with contract, breach of contract and declaratory judgment, contending that a limitation on the number of units that a member may own can be imposed only by amendment of PCH's bylaws, not by Board action. PCH filed a counterclaim, asserting that Plaintiffs' action was a violation of PCH's bylaws and the occupancy agreements that the

6

Robbinses and the Estate's decedent signed. Following the completion of discovery, both Plaintiffs and PCH filed motions for summary judgment.

By orders entered July 30, 2014, August 1, 2014 and September 3, 2014, the trial court dismissed PCH's counterclaim with prejudice, denied PCH's motion for summary judgment in its entirety, and denied reconsideration of the summary judgment ruling. On September 3, 2014, the trial court, by separate order, granted Plaintiffs summary judgment on their declaratory judgment claim and ordered that:

> The Board Policy Passed on April 16, 2013 limiting the number of units a member is permitted to own is void. Plaintiffs shall be permitted to proceed with the contract for purchase of unit 1015.

(Trial Court Order.) The trial court in this September 3, 2014 order also granted Plaintiffs summary judgment on liability on their contract claims, but denied summary judgment on the tortious interference with contract claims on the ground that there were disputes of fact concerning Board members' knowledge of the Robbinses' desire to purchase Unit 1015. PCH timely appealed the trial court's September 3, 2014 order granting partial summary judgment in Plaintiffs' favor.[1] PCH also moved for a stay, and on October 8, 2014, the trial court stayed both its order that Plaintiffs be allowed to proceed with the purchase of Unit 1015 and all remaining proceedings in this action pending PCH's appeal. (Trial Court Stay Order, R.R. at 3243a.)

---

[1] PCH filed its appeal in the Superior Court and on May 4, 2015, the Superior Court transferred this appeal to this Court on the ground that this Court has exclusive jurisdiction, under 42 Pa. C.S. § 762(a)(5), over appeals in actions involving corporate affairs of nonprofit corporations and their members and directors.

As a threshold matter, we must determine whether and what parts of the trial court's orders in this matter are properly before us. Because the trial court's orders did not resolve all claims in this action, its grant of partial summary judgment on Plaintiffs' contract claims, its dismissal of PCH's counterclaim, and its denial of PCH's motion for summary judgment are not final orders and are not appealable. Pa. R.A.P. 341(b)(1). However, the trial court's grant of a declaratory judgment voiding the Board's limitation on the number of units that a member may own resolved Plaintiffs' claim for declaratory relief and is therefore appealable as an order "expressly defined as a final order by statute" under Pa. R.A.P. 341(b)(2). 42 Pa. C.S. § 7532 (declaratory judgment order "shall have the force and effect of a final judgment or decree"); *Swords v. Harleysville Insurance Co.*, 883 A.2d 562, 565 n.4 (Pa. 2005); *Nationwide Mutual Insurance Co. v. Wickett*, 763 A.2d 813, 817 (Pa. 2000); *Pennsylvania Services Corp. v. Texas Eastern Transmission, LP*, 98 A.3d 624, 626 n.1 (Pa. Super. 2014); *Titeflex Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 88 A.3d 970, 974-76 (Pa. Super. 2014). In addition, the trial court's order that "Plaintiffs shall be permitted to proceed with the contract for purchase of unit 1015" is an appealable interlocutory order under Pa. R.A.P. 311(a)(4) as an "order that grants … an injunction," because it enjoins PCH with respect to its approval or rejection of the Robbinses' purchase. (*See* Trial Court Stay Order, R.R. at 3243a (characterizing that portion of its September 3, 2014 order as "enjoining Defendant from preventing the sale of Unit 1015").) This Court therefore has jurisdiction to review the trial court's rulings that PCH's Board lacked the power to impose a two-unit ownership limitation by policy and that "Plaintiffs shall be permitted to proceed with the contract for purchase of unit 1015."

8

PCH argues that its Board has the power under PCH's governing documents to impose a restriction on the number of units that a member may own by policy without a vote of the members to amend the bylaws. We do not agree.[2]

As the parties correctly assert and the trial court held, Maryland law applies to the issues in this appeal. Although the events here all occurred in Pennsylvania, the property is located in Pennsylvania and Plaintiffs are Pennsylvania citizens, the issues in this action concern the corporate governance of PCH and rights of PCH members under its articles of incorporation and bylaws. Because PCH is a Maryland nonprofit corporation, but the housing cooperative that it operates is in Pennsylvania and its members as residents of that building are Pennsylvanians, PCH is a "foreign domiciliary corporation" under the Nonprofit Corporation Law of 1988 (Nonprofit Corporation Law). 15 Pa. C.S. § 6102. The governance of a foreign domiciliary corporation is subject to the requirements of the Pennsylvania statutes listed in the Section 6145(c) of the Nonprofit Corporation Law, but unless a statute listed in Section 6145(c) governs the issue before the court, the court in an action brought by a member against such a corporation that "relates to the internal affairs" of the corporation "shall apply the law of the jurisdiction under which the foreign domiciliary corporation was

_____

[2] Because this is an appeal from a grant of summary judgment, our standard of review of the trial court's decision is *de novo* and the scope of review is plenary. *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011); *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159-60 (Pa. 2010). Although Plaintiffs have repeatedly asserted that this Court may reverse the trial court only for abuse of discretion, those contentions misstate the law. *See Summers*, 997 A.2d at 1159-60 (appellate court's use of abuse discretion standard in upholding grant of summary judgment is reversible error because proper standard of review on appeal from summary judgment is *de novo*). We affirm the trial court's holding that the Board's policy is void because the trial court's legal conclusion was correct, not because our review is limited.

9

incorporated." 15 Pa. C.S. § 6145(b). None of the statutes listed in Section 6145(c) applies here.[3] Accordingly, this action is governed by the law of the jurisdiction under which PCH was incorporated, Maryland.

PCH is a "cooperative housing corporation" subject to the requirements of the Maryland Cooperative Housing Corporation Act (Cooperative Housing Act). Md. Code, Corporations & Associations, §§ 5-6B-1(g), 5-6B-33. Under the Cooperative Housing Act, a member's ownership interest is personal property and the member's possessory rights with respect to his or her unit are under a proprietary lease from the cooperative housing corporation. Md. Code, Corporations and Associations, § 5-6B-16; *Village Green Mutual Homes, Inc. v. Randolph*, 760 A.2d 716, 718-20 (Md. 2000). The Cooperative Housing Act contains no provisions concerning what actions must be done by bylaw and what powers the board of directors has. The Cooperative Housing Act, however, provides that Maryland statutes "applicable to stock and nonstock corporations shall apply to all cooperative housing corporations," unless they conflict with a provision of the Cooperative Housing Act. Md. Code, Corporations & Associations, § 5-6B-15.

Maryland's corporations laws provide that "[a]ll powers of the corporation may be exercised by or under authority of the board of directors

---

[3] Most of the statutes that apply to foreign domiciliary corporations deal with matters such as annual reports, records and inspection, indemnification, voting and membership meetings, appointment of a custodian and fundamental corporate changes. 15 Pa. C.S. § 6145(c). Only two of the listed statutes, 15 Pa. C.S. §§ 5504(b) and 5769(b), deal with bylaws, powers of the board of directors or membership rights. Section 5504(b) limits the power of the board of directors to amend the bylaws on certain subjects even if the bylaws permit amendment by the board of directors. 15 Pa. C.S. § 5504(b). That is not an issue here because PCH's bylaws do not allow the Board to amend the bylaws. Section 5769(b) deals only with due process procedures for expulsion from membership. 15 Pa. C.S. § 5769(b).

10

except as conferred on or reserved to the stockholders by law or by the charter or bylaws of the corporation." Md. Code, Corporations and Associations, § 2-401(b). Maryland's corporations laws further provide that "the charter or bylaws of a nonstock corporation may … [p]rescribe the rights, privileges, and qualifications of its members." Md. Code, Corporations and Associations, § 5-202(b)(3). A corporation's articles of incorporation and bylaws are analyzed under the principles governing contract interpretation. *Tackney v. U.S. Naval Academy Alumni Association, Inc.*, 971 A.2d 309, 318 (Md. 2009).

Here, PCH's articles of incorporation provide that the "qualifications, rights and privileges" of its members shall be set forth in its bylaws. (PCH Articles of Incorporation Art. V § 1, R.R. at 27a.) Restrictions on ownership and on transfer of units involve the rights and privileges of members and therefore must be set forth in PCH's bylaws unless the bylaws otherwise provide. Nothing in PCH's bylaws limits the number of units that a member may own. Although PCH's bylaws do not expressly grant a right to own multiple units or a specific number of units, they contemplate and do not prohibit ownership of multiple units, including ownership of three units, as they address the application of voting and quorum rules to such multi-unit ownership. (PCH Bylaws Art. IV §§ 5, 7, R.R. at 36a.) While the bylaws restrict transfer of units, those restrictions do not bar transfer to existing members or refer to ownership of other units. (*Id.* Art. III § 5, R.R. at 34a-35a.) PCH's bylaws do not expressly grant its Board any power to alter the rights or privileges of its members. (*Id.* Art. V § 2, R.R. at 37a.) Moreover, PCH's occupancy agreements, the proprietary leases that govern the members' rights in their units, do not restrict the number of units that the member may own or limit transfer based on the transferee's ownership of other units.

11

PCH's bylaws do provide that both eligibility for membership and the right to transfer are subject to Board approval of the applicant or transferee. (PCH Bylaws Art. III §§ 1, 5, R.R. at 33a-35a.) The bylaws also expressly grant the Board the power "[t]o accept or reject all applications for membership and admission to occupancy of a Unit" and "[t]o promulgate such rules and regulations pertaining to use and occupancy of the premises as may be deemed proper and which are consistent with these Bylaws and the Articles of Incorporation." (*Id.* Art. V § 2, R.R. at 37a.) None of these provisions authorizes restrictions on the number of units that a member may own. The Board's power to approve and reject applicants relates to the approval of the individual seeking to acquire a unit based on his or her characteristics. In contrast, the policy on ownership of multiple units adopted by the Board by its terms relates to the rights of members to own multiple units, not to characteristics of applicants that reasonably bear on their fitness to own a unit or an additional unit in the building. Indeed, it is not framed as a criterion for evaluating individuals for membership and does not refer to applications for membership or transfer at all. Rather it states that "[a]s a new policy, any one member may not own more than two units." (April 2013 Board Minutes, R.R. at 1113a.) The Board's two-unit limitation likewise cannot be characterized as a policy on use or occupancy. It does not address how the unit is used by the member, such as whether it is occupied by the member, whether it is combined into a single dwelling with another unit or units, or whether structural changes are made in the unit. Instead it regulates only what the member can own, not what the member can do with units that he or she owns.

Contrary to PCH's contentions, the fact that PCH's bylaws grant the Board a general power to "do all such acts and things as are not by law or these

12

Bylaws directed to be exercised and done by the members" (PCH Bylaws Art. V § 2, R.R. at 37a) does not give the Board authority to limit the number of units that members may own. Such a grant of power authorizes the Board to manage PCH's business and act on matters that neither law nor its articles of incorporation require be addressed in the bylaws. *See Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001); *Warren v. Fitzgerald*, 56 A.2d 827, 832-33 (Md. 1948). Limiting member ownership rights is not the management of PCH's business as a housing cooperative; it is a regulation of the rights and privileges of PCH's members, which, under PCH's articles of incorporation, must be set forth in its bylaws.

PCH argues that the nature of housing cooperatives gives its Board the power to limit the number of units a member may own. PCH is correct that its members do not hold fee simple title to their units and are in a landlord-tenant relationship with respect to occupancy of the units. Md. Code, Corporations and Associations, § 5-6B-16; *Village Green Mutual Homes, Inc.*, 760 A.2d at 718-21; *Green v. Greenbelt Homes, Inc.*, 194 A.2d 273, 275-77 (Md. 1963). It is also well established that housing cooperatives may impose transfer restrictions and approval requirements on their members. *See*, *e.g.*, *Kohler v. Snow Village, Inc.*, 475 N.E.2d 1298, 1303-06 (Ohio App. 1984) (upholding prohibition of subleases and transfer approval requirements); *Alexy v. Kennedy House, Inc.*, 507 F. Supp. 690, 697-701 (E.D. Pa. 1981) (upholding corporation's right to buy back unit at a transfer value price based on seller's original purchase price and restrictions on subleases); *Mowatt v. 1540 Lake Shore Drive Corp.*, 385 F.2d 135, 137-38 (7th Cir. 1967) (upholding sublease and transfer approval requirements); *Gale v. York Center Community Cooperative, Inc.*, 171 N.E.2d 30, 32-34 (Ill. 1960) (upholding

13

corporation's right to buy back and transfer approval requirements); *Weisner v. 791 Park Avenue Corp.*, 160 N.E.2d 720, 723-24 (N.Y. 1959) (upholding corporation's right to reject transfer of proprietary lease).

The issue here, however, is not whether PCH may limit ownership to two units, but how it may impose that limitation. None of the cases cited by PCH suggest that restrictions on the number of units that members own may be imposed by board of directors' action rather than by bylaw. To the contrary, the restrictions on transfer that have been upheld were set forth in housing cooperative's bylaws or agreed to by the members in their proprietary leases, and were not policies unilaterally imposed by board of directors' action. *See Kohler*, 475 N.E.2d at 1304-06; *Alexy*, 507 F. Supp. at 693, 697; *Mowatt*, 385 F.2d at 135; *Gale*, 171 N.E.2d at 31-32; *Weisner*, 160 N.E.2d at 722; *Penthouse Properties v. 1158 Fifth Avenue, Inc.*, 11 N.Y.S.2d 417 (N.Y. App. 1939). Those cases that have upheld boards of directors' policies have involved use of the unit or approval and rejection of applicants based on the applicants' characteristics, not limitations of ownership rights. *See Kelley v. Broadmoor Cooperative Apartments*, 676 A.2d 453, 455 (D.C. App. 1996) (sublease surcharge); *Alexy*, 507 F. Supp. at 696 (sublease restrictions); *Goldstone v. Constable*, 443 N.Y.S.2d 380, 382 (N.Y. App. 1981) (policy restricting transfer to individuals who will reside in the unit). In contrast, courts have held that a housing cooperative's board of directors lacks authority to impose substantive restrictions on transfer and ownership rights that are not set forth in the bylaws or the proprietary lease. *Wirth v. Chambers-Greenwich Tenants Corp.*, 928 N.Y.S.2d 288, 290-92 (N.Y. App. 2011) (board of directors lacked authority to limit sale of unit to particular type of purchaser where proprietary lease permitted any residential use); *Oakley v. Longview Owners, Inc.*,

14

628 N.Y.S.2d 468, 470 (N.Y. Sup. 1995) (invalidating board of directors' policy barring transfers of units for a sale price below a minimum floor price).

PCH also argues that the Board's policy limiting ownership to two units is protected by the business judgment rule. This argument likewise fails. Under Maryland law, the business judgment rule protects decisions of a corporation's board of directors from judicial review where it is not shown that the board's actions were in bad faith, arbitrary, or fraudulent. *Tackney*, 971 A.2d at 316-21; *Sadler v. Dimensions Healthcare Corp.*, 836 A.2d 655, 673 (Md. 2003); *Schuman v. Greenbelt Homes, Inc.*, 69 A.3d 512, 519 (Md. App. 2013). The record here shows disputed facts concerning the Board's knowledge and motives that would preclude any finding on summary judgment that the Board's decision to impose a two-unit limitation was made in bad faith and there is no evidence of fraud.[4] The business judgment rule, however, cannot validate actions of the corporation's board of directors that are beyond its authority. *Sadler*, 836 A.2d at 673; *Warren*, 56 A.2d at 834. Because the Board lacked authority to limit unit ownership by policy, the business judgment rule has no applicability here.

---

[4] There was evidence before the trial court that the Board's reasons for the policy were to keep membership in PCH affordable and prevent creation of large combined units that could be difficult to resell, and that its action had nothing to do with personal animus or the Robbinses as purchasers. (*See* March 2013 Board Minutes, R.R. at 73a; Depositions of Board Members Mingoia, Holshin, and Martini, and PCH general manager, R.R. at 2062a, 2083a-2085a, 2104a, 2107a-2108a, 2140a, 2155a-2156a, 2348a-2350a, 2419a, 2448a-2451a.) There was also conflicting evidence as to whether any of the Board members supporting the two-unit limit even knew of the Robbinses' interest in a third unit at the time. (*Compare* Depositions of Board Members Mingoia, Holshin, Martini and Barry and Plaintiffs, R.R. at 2101a-2103a, 2112a, 2139a-2140a, 2345a, 2553a, 2564a, 2894a, 2938a-2940a, 3043a-3045a (no Board knowledge of Robbinses' request) *with* Depositions of Board Members Holshin and Mateo-Bermudez, R.R. at 2150a, 2523a.)

Because PCH's articles of incorporation require that the rights and privileges of members be set forth in its bylaws and PCH's bylaws do not grant the Board authority to restrict the number of units that a member may own, PCH's Board as a matter of law lacked authority to enact a policy limiting ownership to two units. The trial court therefore properly granted a declaratory judgment voiding the Board policy.

The trial court also ordered that "Plaintiffs shall be permitted to proceed with the contract for purchase of unit 1015." It is unclear from this language whether the trial court ordered PCH to approve the sale or whether it merely required PCH to proceed with the process of considering whether the Robbinses satisfied its existing approval requirements without the invalid ownership limitation.[5] While the latter order would clearly be valid and supported by the record, as the undisputed evidence shows that PCH refused to evaluate the proposed sale under its other approval requirements, an order compelling PCH to approve the sale is not. There is no dispute that PCH has other financial and criminal background check requirements and there was no challenge to the validity of those requirements. The record does not show that the Board found that the Robbinses satisfied those other requirements or that it was undisputed that they satisfied all other requirements for approval. It could, therefore, be ordered on summary judgment only that PCH must proceed with consideration of the

---

[5] Although the trial court's description of its order as "enjoining Defendant from preventing the sale of Unit 1015" (Trial Court Stay Order, R.R. at 3243a) suggests that it intended to order that PCH approve the sale, its opinion suggests that the order required only the PCH consider the application under its other approval requirements. (See Trial Court Opinion at 7 ("The court notes that this transaction must still comply with any other applicable rules and regulations").)

application for approval, not that PCH must approve the sale of the unit to the Robbinses.

For the foregoing reasons, we affirm the trial court's declaratory judgment that the Board's April 16, 2013 ownership limitation is void, but vacate the trial court's injunctive order that "Plaintiffs shall be permitted to proceed with the contract for purchase of unit 1015."[6]

_____
JAMES GARDNER COLINS, Senior Judge

---

[6] This Court's and the trial court's orders address only the sale and purchase of Unit 1015, not the separate issue of the Robbinses' combining it with the two other units that they own. We note that the record shows that the wall between adjoining Units 1013 and 1015 is a firewall and that there are disputes of fact as to whether Units 1013 and 1015 can be combined given the firewall between the units. (Depositions of PCH general manager and Plaintiffs, R.R. at 2432a-2434a, 2934a, 3037a-3039a.) To the extent that the Board has policies prohibiting the breaching of firewalls or concerning removal of walls between units, nothing in this opinion or order invalidates such policies or requires PCH to approve the Robbinses' alterations to connect Unit 1015 with the two other combined units that they own. Unlike ownership restrictions, policies concerning the tearing down of walls between units are matters concerning what a member does with and to the units that he or she owns, and would therefore be within the Board's power under PCH's bylaws to "promulgate such rules and regulations pertaining to use and occupancy of the premises as may be deemed proper and which are consistent with these Bylaws and the Articles of Incorporation." (PCH Bylaws Art. V § 2(c), R.R. at 37a.)

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Robbins and Jennifer Merves   :
Robbins, and Larry Scott Auerbach,   :
Executor of the Estate of Shirley   :
Braverman, Deceased   :
  : No. 979 C.D. 2015
            v.   :
  :
Penn Center House, Inc.,   :
  :
         Appellant   :

## O R D E R

AND NOW, this 23rd day of May 2016, the order of September 3, 2014 of the Philadelphia County Court of Common Pleas in the above-captioned matter is AFFIRMED insofar as it granted a declaratory judgment that the policy passed by the board of directors of Penn Center House, Inc. limiting the number of units that a member is permitted to own is void. The order of September 3, 2014 is VACATED insofar as it ordered that "Plaintiffs shall be permitted to proceed with the contract for purchase of unit 1015." This matter is REMANDED to the Philadelphia County Court of Common Pleas for proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
JAMES GARDNER COLINS, Senior Judge